UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:21-CV-132-TBR

**RICHARD MICHAEL GRAVES, JR.,**                                              **PLAINTIFF**

v.

**KILOLO KAJIKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,**                                       **DEFENDANT**

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter is before the Court on the Report and Recommendation of Magistrate Judge Lanny King, [DN 23], in which the Magistrate Judge recommended affirming the Social Security Commissioner's denial of Plaintiff's claim for disability benefits. Plaintiff filed objections to the Report and Recommendation, [DN 24], and the Commissioner filed a response to those objections, [DN 25]. The matter is therefore ripe for review. For the reasons set forth below, the Court will overrule Plaintiff's objections and adopt the Magistrate Judge's Report and Recommendation.

**I.      BACKGROUND**

Plaintiff filed his complaint in this action on September 9, 2021, seeking judicial review of the final administrative decision denying Plaintiff's applications for Social Security Disability Insurance benefits and Supplemental Security Income benefits. [DN 1]. Plaintiff filed said

1

applications on July 8, 2020. [DN 11 (Administrative Record), pp. 15, 256–74][1]. He alleged that his disability began on April 29, 2020. *Id.* at 15. These applications were initially denied in September 2020. *Id.* Plaintiff requested a hearing, which was held on April 22, 2021. *Id.*

The Administrative Law Judge ("ALJ") issued her decision on May 21, 2021, finding that Plaintiff was not disabled. *Id.* at 12–34. In reaching this conclusion, the ALJ utilized the five-step evaluation process that applies in all Social Security disability cases. Specifically, she found:

- Step 1: Plaintiff meets the insured status requirements of the Social Security Act and has not engaged in substantial gainful activity since the alleged onset date of April 29, 2020.

- Step 2: Plaintiff suffers from the severe impairments of inguinal hernia (status post repair in September 2020); osteoarthritis of the knees; obesity; persistent depressive disorder; impulse control disorder; and generalized anxiety disorder.

- Step 3: These impairments, either alone or in combination, do not satisfy the medical criteria of any impairment listed in the regulations.

*Id.* at 17–20. The ALJ then went on to consider Plaintiff's residual functional capacity ("RFC") and found that Plaintiff was able to perform light work, with exceptions. *Id.* at 20–26. In doing so, the ALJ considered the evidence, including a Mental Capacity Assessment performed in August 2020 by Kirsten Tabor, which the ALJ describes as "a crisis caseworker at Pennyroyal Center." *Id.* at 25. Ms. Tabor opined that Plaintiff had various limitations (ranging from mild to extreme) in a variety of areas (such as understanding, remembering, and applying information and the ability to handle conflicts). *Id.* at 25, 520–22. The ALJ ultimately concluded that Ms.

---

[1] For ease of reference when referring to the Administrative Record at DN 11, the Court cites to the page numbers located at the bottom right corner of each page.

Tabor's opinion might have been consistent with the evidence at the time it was rendered, but it was not consistent "with subsequent evidence." *Id.* at 25. The assessment had been completed while Plaintiff was still in the crisis program and living in a shelter, while more recent evidence indicated an improvement in his condition. *Id.* The ALJ found that there was no evidence "suggesting [Plaintiff] experienced symptoms as severe as reported for 12 continuous months" as required by the regulations. *Id.* After making these and other findings related to Plaintiff's RFC, the ALJ then went on to consider Steps 4 and 5 of the evaluation process and found as follows.

- Step 4: Plaintiff is unable to perform his past work.
- Step 5: Plaintiff can perform other work in the national economy, including the jobs of marker, small product assembler, and electrical accessory assembler.

*Id.* at 26–27. The ALJ therefore found that Plaintiff was not disabled from April 29, 2020 through the date of the ALJ's decision on May 21, 2021. *Id.* at 27. Plaintiff thereafter sought review from the Appeals Council, but his request was denied. *Id.* at 1–3.

Plaintiff then sought judicial review of the ALJ's May 21, 2021 decision. [DN 1]. Specifically, Plaintiff challenges the ALJ's findings at Steps 4[2] and 5 "because the physical RFC determination is not supported by substantial evidence, and because the ALJ failed to properly evaluate and explain his analysis of the opinion of CSW Tabor." [DN 16, p. 1]. Pursuant to 28 U.S.C. § 636 and General Order No. 2019-11, the Court referred the matter to Magistrate Judge Lanny King for a report and recommendation. [DN 9]. The Magistrate Judge issued his Report and Recommendation on July 15, 2022 and recommended affirming the ALJ's decision. [DN 23]. Plaintiff timely filed objections to the Report and Recommendation, [DN 24], and

---

[2] The Court understands that Plaintiff does not actually challenge the ALJ's finding at Step 4 (that Plaintiff is unable to perform past work), but rather, the RFC determination that preceded Steps 4 and 5.

3

Defendant has responded to those objections, [DN 25]. This matter is therefore fully briefed and ripe for review.

## II.     LEGAL STANDARD

It is well-settled that the Court reviews the objected-to portions of a report and recommendation *de novo*. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Its review of the Commissioner's determination is, of course, more deferential. *See* 42 U.S.C. § 405(g); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The scope of that inquiry is limited to (1) "whether the findings of the ALJ are supported by substantial evidence" and (2) "whether the ALJ applied the correct legal standards." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 405–06). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "When substantial evidence supports an ALJ's decision, we affirm even if we would have decided differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam), and even if substantial evidence also supports the opposite conclusion, *see Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 805 (6th Cir. 2011). "[H]owever, 'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III. ANALYSIS

Magistrate Judge King found Plaintiff's argument that the ALJ failed to properly evaluate and explain Ms. Tabor's opinion to be unpersuasive for two reasons. First, Magistrate Judge King explained, "the ALJ properly discounted [Ms. Tabor's] opinion because it did not satisfy the duration requirement." [DN 23, p. 4]. Second, crisis case workers (or crisis services workers) are not medical sources under 20 C.F.R. § 404.1502(a), and as a result, the ALJ was not required to articulate its evaluation of Ms. Tabor's opinion. *Id.*

Plaintiff now asks the Court to reject the Magistrate Judge's Report and Recommendation for two reasons. The first concerns the ALJ's findings that Ms. Tabor's opinion did not satisfy the duration requirement. The second objection relates to the characterization of Ms. Tabor's opinion as a "nonmedical source" due to her credentials as a crisis case worker (or crisis services worker). The Court address each objection in turn.

#### A. The Duration Requirement

To be considered disabling under the Social Security regulations, an impairment must satisfy the duration requirement set forth in 20 C.F.R. § 404.1509. That provision states in full, "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." *Id.* In the present case, the ALJ found that there was no evidence "suggesting [Plaintiff] experienced symptoms as severe as reported for 12 continuous months." [DN 11, p. 25]. In reaching this conclusion, the ALJ noted the opinion of Ms. Tabor, but found that, while it might have been consistent with the evidence at the time it was rendered, it was not consistent "with subsequent evidence." *Id.* The assessment had been completed while Plaintiff was still in the crisis program and living in a shelter, while more recent evidence indicated an improvement in his condition. *Id.*

The Magistrate Judge agreed that the ALJ "properly discounted [Ms. Tabor's] opinion because it did not satisfy the duration requirement." [DN 23, p. 4].

Plaintiff now argues that the Court should reject this finding of the Magistrate Judge, citing to his opening brief, in which Plaintiff "explained the 13-month window from March of 2020 through April of 2021." [DN 24, p. 2 (citing DN 16-1, pp. 12–14)]. In other words, he argues that "[t]he ALJ rationale for discrediting the restrictions assessed by [Ms. Tabor] on the basis of a less-than-twelve-month duration of Plaintiff's impairment is not borne out by [the] record." [DN 16-1, p. 13]. The "13-month window" that he refers to is explained by him as follows:

> The ALJ ignores the fact that the psychosocial evaluation performed on June 17, 2020, by Danielle Smith, Psy.D., documented a three-month history of anxiety, depression and angry outbursts. She noted that over the past three months, Plaintiff had experienced five episodes of outbursts during which he would punch walls, lash out verbally, destroy property, and threaten others. Dr. Smith characterized Plaintiff's mental health symptoms as impacting his interpersonal, occupational, and personal care functioning. During the hearing held on held on April 22, 2021, Plaintiff confirmed that he continues to receive treatment at Pennyroyal Mental Health Center; however, he testified that his symptoms have worsened since his discharge from the crisis program.

*Id.* at 12–13 (internal citations omitted).

The Court finds that the ALJ's finding regarding the durational requirement is supported by substantial evidence of record. Though Plaintiff argues that his disability continued for at least thirteen months and even worsened after he left the Pennyroyal Center, the record reflects that the Plaintiff showed improvement in October 2020. [DN 11, p. 701]. The ALJ explained this in her opinion, and also noted that, despite showing improvement, Plaintiff still struggled with isolation, distrust, anger control, and so on. *Id.* at 22–23. The ALJ also discussed treatment notes from March 2021 indicating that Plaintiff's condition was improving and that he occasionally had days where he felt "very irritable," but those days did not occur often. *Id.* at 23, 874.

On this point, the Court notes that "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In this case, there exists "more than a scintilla" of evidence, as outlined above, that Plaintiff's condition had improved to the point that he was not disabled for a period of twelve months or more, as required by the regulations. Thus, the Court must affirm the ALJ's decision, even if the Court might have ruled differently and even if substantial evidence also supports the opposite conclusion. *See, e.g.*, *Kinsella*, 708 F.2d at 1059.

In sum, the Court finds that the ALJ's decision that the durational requirement had not been met was supported by substantial evidence of record, as outlined above and as discussed by the ALJ in her opinion. Accordingly, with respect to this issue, the Court finds that the ALJ's findings are supported by substantial evidence, and there is no indication that the ALJ applied an incorrect legal standard. The Court will therefore overrule this objection and will adopt the Magistrate Judge's Report and Recommendation on this issue.

### B. Ms. Tabor's Credentials

Under the most recently issued rules, which apply to claims filed on or after March 27, 2017, ALJs are not required to articulate how they consider evidence from nonmedical sources; however, ALJs must articulate their evaluations of evidence from medical sources. *See* 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c. A medical source is defined as "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502(d). Case law clarifies that licensed social workers qualify

7

as medical sources under the new rules. *See Stacie B. v. Comm'r of Soc. Sec.*, No. 2:21-cv-4650, 2022 WL 1793149, at *4–5 (S.D. Ohio June 2, 2022). Accordingly, for claims filed after March 27, 2017, a licensed social worker's opinion is a medical opinion, and the ALJ must articulate its evaluation of such an opinion. *See* 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c.

In the present case, the ALJ referred to Ms. Tabor as a "a crisis caseworker at Pennyroyal Center." [DN 11, p. 25]. As a result, the ALJ did not articulate its evaluation of her opinion as required by 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c for opinions from a medical source. The Magistrate Judge also referred to Ms. Tabor as a crisis services worker or a crisis case worker (the title used by Ms. Tabor) and noted that "Plaintiff repeatedly refers to Ms. Tabor as a 'CSW' (crisis services worker)." [DN 23, p. 3]. Because Ms. Tabor was a crisis case worker or crisis services worker, the Magistrate Judge found that the ALJ was not required to articulate how he had evaluated her opinion. *Id.* at 4. Plaintiff now argues that Ms. Tabor is a licensed clinical social worker and as such, her opinion was a medical opinion entitled to an explanation under 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c. [DN 24].

The Court disagrees. In her evaluation of Plaintiff, Ms. Tabor signed off with her name and degree (B.S.) and listed her "title" as "crisis services worker." [DN 11, p. 522]. There is no evidence in the record to suggest that she was a certified social worker, and while Plaintiff repeatedly referred to her as a "CSW" in his briefing, he never defined the acronym. *See* [DN 16-1]. Further, in his briefing, Plaintiff referred to Ms. Tabor as "Kirsten Tabor, Crisis Case Worker" before repeatedly referring to her as "CSW Tabor." *Id.* at 4–5. Given Ms. Tabor's self-titled status as a crisis services worker and Plaintiff's own reference to her title as crisis case worker, it was not error for the Magistrate Judge (or the ALJ) to assume that CSW, as used in Plaintiff's briefing, stood for crisis services worker.

Plaintiff cites to no evidence of record to support his assertion that Ms. Tabor is a licensed clinical social worker. Instead, Plaintiff cites to a Kentucky Board of Social Work ("KBSW") webpage (which exists outside the administrative record), which allows users to verify the license details of social workers in the state. *See* [DN 24, p. 3 n.1].[3] Plaintiff argues that this webpage demonstrates that Ms. Tabor is a Certified Social Worker, or CSW, and not a crisis service worker, "as the Magistrate Judge incorrectly assumed." *Id.* at 3.

The Court declines to consider this evidence, as it is outside the administrative record. As the Sixth Circuit has explained,

> When a court undertakes review of agency action, "consideration of evidence outside the administrative record is proper under some circumstances, *e.g.*, 'for background information . . . or for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision.'" *Norwich Eaton Pharms., Inc. v. Bowen*, 808 F.2d 486, 489 (6th Cir. 1987) (alteration in original) (quoting *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir.1 980)). However, we have cautioned that "the reviewing court 'must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo.'" *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1428 (6th Cir. 1991) (quoting *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984)).

*Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 839 (6th Cir. 2016). In *Miller*, the Sixth Circuit held that it was improper for the reviewing court to consider evidence outside the record to determine the credentials of a physician (M.D, Ph.D., or N.P.) to determine if he was a treating medical source. *Id.* at 839–840.

The *Miller* court ultimately remanded the matter to the Commissioner so the parties could submit evidence that would allow the ALJ to clarify the doctor's identity and reassess his opinion if necessary. *Id.* at 840. However, in this case, the Court declines to do so. On this point, it is important to note that the reviewing court may consider new evidence outside the record to

---

[3] https://secure.kentucky.gov/formservices/BSW/licenseverification/search.

determine if remand is warranted. *See Gerron v. Comm'r of Soc. Sec.*, NO. 3:20-CV-00831-RGJ-CHL, 2022 WL 1284747, *3–4 (W.D. Ky. Apr. 7, 2022; 42 U.S.C. § 405(g).[4] However, it must first be shown that the new evidence is material and that there exists good cause for the failure to incorporate such evidence into the prior record. *Gerron*, 2022 WL 1284747, at *4 (citing 42 U.S.C. § 405(g)). In this case, the KBSW webpage submitted by Defendant indicates that a Kristen (not Kirsten) Louise Tabor is a licensed clinical social worker, and this appears to be a different person than the Kirsten M. Tabor that conducted the evaluation of Plaintiff in this case. The Court therefore finds that the new evidence is not material, and further, Plaintiff has not stated any reason for failing to incorporate such evidence in the prior record. The Court therefore finds that remand (which neither party has sought) would be inappropriate.

In sum, there is no evidence in the administrative record indicating that Kirsten Tabor is a licensed social worker, and Ms. Tabor's own signature on her evaluation indicates that she was, in fact, a crisis services worker. Because the evidence of record indicates that she was a crisis services worker, she did not give a medical opinion in this case, and the ALJ was not required to articulate its evaluation of her opinion. Accordingly, with respect to this issue, the Court finds that the ALJ's findings are supported by substantial evidence, and the ALJ applied the correct legal standard. The Court will therefore overrule this objection and will adopt the Magistrate Judge's Report and Recommendation on this issue.

## IV.     CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Plaintiff's objections, [DN 24], are **OVERRULED** and the Report and Recommendation, [DN 23], is **ADOPTED** as the opinion of the Court. The decision of the ALJ is **AFFIRMED**, and this matter is therefore

---

[4] This Report and Recommendation was adopted without change by the District Court. *Gerron v. Comm'r of Soc. Sec.*, No. 3:20-CV-831-RGJ-CHL, 2022 WL 1274407 (W.D. Ky. Apr. 28, 2022).

**DISMISSED** and **STRICKEN** from the Court's active docket. A separate judgment shall follow.

                                **Thomas B. Russell, Senior Judge**
                                **United States District Court**

August 18, 2022

cc: Counsel of Record